**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Justin Kasper, et al., | No. CV-21-01191-PHX-SMB |
| Plaintiffs, | **ORDER** |
| v. | |
| Samsung SDI Company Limited, et al., | |
| Defendants. | |

Pending before the Court is Defendant Samsung SDI Co., Ltd.'s ("Samsung's") Motion to Dismiss for Lack of Personal Jurisdiction. (Doc. 26.) Once the Motion was fully briefed, (*see* Docs. 28; 29), the Court held oral argument on January 31, 2022. After considering the parties' briefing and arguments, as well as the relevant caselaw, the Court will grant Samsung's Motion to Dismiss for reasons explained below.

**I.   BACKGROUND**

Plaintiffs' First Amend Complaint ("FAC") alleges that Plaintiff Justin Kasper purchased a Samsung lithium-ion 18650 battery for use in his e-cigarette[1] device from Defendant Red Star Vapor ("Red Star"). (Doc. 11 at 6.) In early August of 2019, Plaintiff Alexis Duran was standing in the bedroom doorway talking to her husband, Plaintiff Justin Kasper, who was laying on his bed with his e-cigarette device on his stomach and his infant, Plaintiff J.K., Jr., ("J.K.") lying next to him. (*Id.*) Plaintiffs claim that "suddenly, and without warning [they] heard a loud pop and saw flames shooting out from the vape pen."

---

[1] Also known as e-cigs, vapes, vape pens, and mods. (Doc. 11 at 3.)

(*Id.*)  At that point, two of the batteries "shot out of the device," and the bed—as well as Plaintiff J.K.—was engulfed flames.  (*Id.*)  Plaintiff Justin Kasper tried to put out the flames and, as a result, suffered scarring on his arms.  (*Id.* at 7.)  Likewise, J.K. suffered physical scarring on his left ear, arm, and leg; and Plaintiffs Justin Kasper and Alexis Duran allege that they suffered emotional scarring from the sight of their child on fire.  (*Id.*)

Plaintiffs subsequently brough suit against Samsung for claims of design and manufacturing defect, failure to warn, negligence, negligent infliction of emotion distress, implied warranty of merchantability, and violation of the Magnuson-Moss Act, 15 U.S.C. § 2301, *et seq.*  (*See generally* Doc. 11.)  Samsung moved to dismiss the FAC for lack of personal jurisdiction, arguing that it has "no connection to Arizona."  (Doc. 26 at 1.)

**II.  LEGAL STANDARD**

Before trial, a defendant may move to dismiss the complaint for lack of personal jurisdiction.  *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977); Fed. R. Civ. P. 12(b)(2).  Plaintiff bears the burden of establishing personal jurisdiction, *Ziegler v. Indian River Cty.*, 64 F.3d 470, 473 (9th Cir. 1995), and "need only make a prima facie showing of jurisdictional facts" "in the absence of an evidentiary hearing," *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990) (citation omitted).  In determining whether a plaintiff has established a prima facie case for personal jurisdiction over a defendant, the complaint's uncontroverted allegations are accepted as true and "conflicts between the facts contained in the parties' affidavits must be resolved in [plaintiff's] favor."  *Am. Tel. & Tel. Co. v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996).

"When no federal statute governs personal jurisdiction, the district court applies the law of the forum state."  *Freestream Aircraft (Bermuda) Ltd. v. Aero Law Grp.*, 905 F.3d 597, 602 (9th Cir. 2018).  Arizona exerts personal jurisdiction to the "maximum extent permitted by the Arizona Constitution and the United States Constitution."  Ariz. R. Civ. P. 4.2(a); *see*, *e.g.*, *A. Uberti and C. v. Leonardo*, 892 P.2d 1354, 1358 (Ariz. 1995).  Thus, analyzing personal jurisdiction under Arizona law and federal due process are identical.

*Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800–01 (9th Cir. 2004).

To comport with due process, "[a]lthough a nonresident's physical presence within the territorial jurisdiction of the court is not required, the nonresident generally must have certain minimum contacts . . . such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Walden v. Fiore*, 571 U.S. 277, 283 (2014) (internal quotation marks and citations omitted).  This requirement ensures "that a defendant be haled into court in a forum State based on his own affiliation with the State, not based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the State." *Id.* at 286 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)).  "Depending on the strength of those contacts, there are two forms that personal jurisdiction may take: general and specific." *Picot v. Weston*, 780 F.3d 1206, 1211 (9th Cir. 2015) (citation omitted); *Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 416 (9th Cir. 1997).

"When a plaintiff relies on specific jurisdiction, he must establish that jurisdiction is proper for 'each claim asserted against a defendant.'" *Picot*, 780 F.3d at 1211 (quoting *Action Embroidery Corp. v. Atlantic Embroidery, Inc.*, 368 F.3d 1174, 1180 (9th Cir. 2004)).  "In order for a court to exercise specific jurisdiction over a claim, there must be an 'affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum state.'" *Bristol-Myers Squibb Co. v. Superior Court of Cal.*, 137 S.Ct. 1773, 1781 (2017) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)).  Without such a connection, "specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State." *Bristol-Myers Squibb*, 137 S.Ct. at 1781.  "Only contacts occurring prior to the event causing the litigation . . . may be considered by the Court." *Ariz. Sch. Risk Retention Trust, Inc. v. NMTC, Inc.*, 169 F. Supp. 3d 931, 935 (D. Ariz. 2016) (citing *Farmers Ins. Exchange v. Portage La Prairie Mut. Ins. Co.*, 907 F.2d 911, 913 (9th Cir. 1990)).

In analyzing specific jurisdiction, courts use the three-prong minimum contacts test as a guide "to determine whether a defendant has sufficient contacts with the forum to

warrant the court's exercise of jurisdiction[.]" *Freestream*, 905 F.3d at 603. The test requires that:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e., it must be reasonable.

*Id.* (citation omitted); *see also Picot*, 780 F.3d at 1211. "The plaintiff has the burden of proving the first two prongs." *Picot*, 780 F.3d at 1211 (citation omitted). "If the plaintiff succeeds in satisfying [them], the burden then shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable." *Schwarzenegger*, 374 F.3d at 802 (quoting *Burger King*, 471 U.S. at 476–78). Absent a "compelling case" that exercising jurisdiction would be unreasonable, it is presumed reasonable. *Burger King*, 471 U.S. at 477. If a plaintiff fails to meet the first prong, the Court need not address the others. *Ariz. Sch. Risk Retention Trust*, 169 F. Supp. 3d at 936.

## III. DISCUSSION

### A. Failure to Establish Personal Jurisdiction

Plaintiffs argue only specific, and not general, personal jurisdiction. (Doc. 28 at 4 n. 4.) Samsung responds that it is not subject to specific jurisdiction in Arizona. (Doc. 26 at 5.) The Court agrees with Samsung.

Under the first prong of the minimum contacts test, Plaintiffs must show each Defendant "either (1) 'purposefully availed' [itself] of the privilege of conducting activities in the forum, or (2) 'purposefully directed' [its] activities toward the forum." *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1155 (9th Cir. 2006) (citing *Schwarzenegger*, 374 F.3d at 802). This prong presents two distinct standards, with each to be applied under different

circumstances. *Schwarzenegger*, 374 F.3d at 802; *Ziegler*, 64 F.3d at 473 ("[W]e apply different purposeful availment tests to contract and tort cases"). Because Plaintiffs bring claims of negligence and products liability, the Court will apply the purposeful availment test. *See Holland Am. Line Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 460 (9th Cir. 2007) (using purposeful availment test to evaluate personal jurisdiction for negligence and breach of contract claims); *see generally J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 880 (2011) (applying purposeful availment to analyze personal jurisdiction for products liability claim).

The purposeful availment test advances the due process notion that "a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of unilateral activity of another party or a third person." *Burger King*, 471 U.S. at 475 (internal quotation marks and citations omitted). "[It] is based on the presumption that it is reasonable to require a defendant who conducts business and benefits from his activities in a state to be subject to the burden of litigating in that state as well." *Brainerd v. Governors of the Univ. of Alberta*, 873 F.2d 1257, 1259 (9th Cir. 1989) (citing *Burger King*, 471 U.S. at 476)). But simply placing "a product into the stream of commerce, without more, is not an act purposefully directed toward a forum state." *Holland*, 485 F.3d at 459 (citing *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 112 (1987)). "Even a defendant's awareness that the stream of commerce may or will sweep the product into the forum state does not convert the mere act of placing the product into the stream of commerce into an act purposefully directed toward the forum state." *Holland*, 485 F.3d at 459. Instead, only if "the sale of a product of a manufacturer or distributor . . . is not simply an isolated occurrence, but arises from the efforts of the manufacturer or distributor to serve directly or indirectly, the market for its product in other States, [would it be] []reasonable to subject it to suit in one of those States if its allegedly defective merchandise has there been the source of injury to its owner or to others." *World-Wide Volkswagen Corp. Woodson*, 444 U.S. 286, 297 (1980). But a defendant's mere, uncalculated prediction that its goods will reach the forum is insufficient; rather, personal jurisdiction will exist "only

1   where the defendant can be said to have targeted the forum." *Nicastro*, 564 U.S. at 882.

2   Here, Samsung has not purposefully availed itself of the privilege of doing business in Arizona. Samsung is incorporated under the laws of the Republic of Korea, where its headquarters and principal place of business are located. (Doc. 26 at 1.) It is not licensed, registered, or authorized to do business in any state, including Arizona. (*Id.* at 2.) It has no offices, warehouses, employees, agents, distributors, or dealers in Arizona; nor does it advertise or market in the state. (*Id.*)

Moreover, although Samsung acknowledges that it designs and manufactures various sizes and models of batteries, including the battery at issue here, (*id*. at 1),[2] it claims that it is a "business-to-business" manufacturer—meaning that the 18650 battery cell is not designed, manufactured, or marketed for use by individual persons or for use in e-cigarettes. (*Id.*) Instead, Samsung avers that the 18650 battery is designed and marketed to be used in "approved applications" by "sophisticated entities" through two distribution channels: (1) the bulk sale of 18650 battery cells to "Packers" in Asia, who assemble the cells into battery packs for subsequent sale and distribution; and (2) the bulk sale of 18650 battery cells to "Transacting Companies" involved in the manufacture or supply of "authorized products," located in Asia, Europe, and North America. (*Id.* at 1–2.) While Samsung fails to define many of its terms—including sophisticated entities, approved applications, and authorized products, (*see generally* Doc. 26)—it does aver that vape pens are not authorized products. (*Id.* at 2.) Samsung states that it has never sold 18650 batteries to a resident of Arizona, shipped any 18650 batteries to an Arizona address, or sold batteries to or had any business with relationship with Red Star. Put simply, Samsung has done nothing more than introduce its 18650 battery cell into the stream of commerce, which does not satisfy the purposeful availment test or confer specific personal jurisdiction. *See Holland*, 485 F.3d at 459.

Rather than dispute Samsung's relevant factual allegations, Plaintiffs invite this

---

[2] Samsung does not admit that the battery at issue was one of its batteries but acknowledges that the Court may make that assumption for the purposes of Samsung's Motion to Dismiss. (*See* Doc. 26 at 1 n. 1.)

Court to read *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017 (2021), as creating a due process standard that extends specific personal jurisdiction to foreign manufacturers who sell products in the United States when their products ultimately wind up in the forum state. (*See* Doc. 28 at 8–10.) The Court declines to do so for two reasons. First, as Samsung correctly highlights, this extension would swallow all personal jurisdiction jurisprudence and render the "arise out of" requirement a vestigial organ of the doctrine. Indeed, *Ford* itself does not purport to go so far and stands only for the proposition that "[w]hen a company like Ford serves a market for a product in a State and that product causes injury in the State to one of its residents, the State's courts may entertain the resulting suit." *Ford*, 141 S. Ct. at 1022. Second, the facts of *Ford* are readily distinguishable from the facts of this case. In the opening paragraph of *Ford*, the Supreme Court explained that "Ford did substantial business in the State—among other things, advertising, selling, and servicing the model of vehicle the suit claims is defective." *Id.* Samsung has no such connection to Arizona, and *Ford* is inapposite here.

      The only facts proffered by Plaintiffs to support jurisdiction fall into two camps: the astonishingly speculative and the outright misleading. The Court addresses the former category first. Plaintiffs claim that Samsung sent cease-and-desist letters to various "vape stores" throughout the United States. (Doc. 28 at 3.) Notwithstanding the absence of cited caselaw demonstrating how this confers personal jurisdiction,[3] Plaintiffs imply that these letters demonstrate that (1) Samsung identified the companies to whom it would send these letters, (2) in so doing, Samsung "did something within Arizona to identify those companies," and (3) somehow this confers personal jurisdiction or warrants jurisdiction discovery in Arizona. (TOA at 10.) This argument is as factually speculative as it is legally meritless. *See Cascade Corp. v. Hiab-Foco AB*, 619 F.2d 36, 38 (9th Cir. 1980) (holding that specific personal jurisdiction did not exist based on defendant sending infringement letters over a series of years); *Stairmaster Sports/Med. Prod., Inc. v. Pac. Fitness Corp.*,

---

[3] Indeed, during oral argument, Plaintiffs acknowledged that such letters "on their own" would "obviously" not confer personal jurisdiction. (Transcript of Oral Argument ("TOA") at 10, *Kasper v. Samsung*, No. 21-cv-01191 (Jan. 31, 2022).)

916 F. Supp. 1049, 1057 (W.D. Wash. 1994) (finding that specific personal jurisdiction was lacking where the only possible basis for jurisdiction was the defendant's act of sending cease-and-desist letters into the forum state).

Now, on to the misleading. Plaintiffs' attempt to paint Samsung as engaging in jurisdiction gamesmanship by stating—during oral argument—that this case began in California and was transferred to Arizona by stipulation of Samsung, who now contests personal jurisdiction. This contention is wholly unfounded.[4] The instant case was initiated in Arizona, as Plaintiffs well know. (*See* Doc. 1 (Plaintiff's initial Complaint filed with *this Court*).) What's more, in Plaintiffs' own briefing on the instant motion, they make the comparison between this case (initiated in Arizona) and another case that Plaintiffs' counsel has against Samsung, which was started in California and then transferred to Arizona. (*See* Doc. 28 at 5–6.) Plaintiffs' erroneous factual assertions aside, the Ninth Circuit has rejected the proposition that defending a suit on the merits means that a party has consented to personal jurisdiction in future, unrelated suits in that same jurisdiction. *See Dow Chem. Co. v. Calderon*, 422 F.3d 827, 833 (9th Cir. 2005) (rejecting the argument "that by failing to object to lack of personal jurisdiction in [a previous] suit, the [previous] defendants impliedly consented to personal jurisdiction" in the instant action).

Plaintiffs' final factual allegation has the unique distinction of being both speculative and misleading. During oral argument, Plaintiffs' counsel asserted (1) that Samsung does a breadth of business in the United States, including California; and (2) that Samsung has admitted as much. (TOA at 7–8.) To bolster this claim, she points the Court to Exhibit A of Plaintiffs' Response, as well as Samsung's admission—in its Motion to Dismiss—that it generally does business in "North America." (*Id.*) Samsung's admission to doing business in North America is not an admission to doing business in the United States or California. (*See* Doc. 26 at 2, 7.) Indeed, as it is currently constituted, the continent of North America includes more than twenty countries. Worse still, is Plaintiffs'

---

[4] At oral argument, Plaintiffs' counsel admitted that this case was initiated in Arizona and claims she had mistakenly "confus[ed]" the two cases.

- 8 -

contention that their attached exhibit remotely supports their claims; it does not. (*See Generally* Doc. 28 at Exhibit A.) The words California, North America, or United States do not appear in Exhibit A. (*Id.*) The Court reminds Plaintiffs' counsel of her duty of candor towards the tribunal. *See* Ariz. R. of Prof. Conduct 3.3(a)(1).

Therefore, the Court finds that it does not have personal jurisdiction over Samsung.

### B.  Futility of Jurisdictional Discovery

Plaintiffs request that, in the event the Court finds that it lacks personal jurisdiction, Plaintiffs be allowed to conduct jurisdictional discovery. (Doc. 28 at 11–12.) A trial court has broad discretion on whether to permit limited jurisdictional discovery. *Data Disk*, 557 F.2d at 1285 n.1 (citing *Wells Fargo & Co. v. Wells Fargo Express Co.*, 556 F.2d 406, 430 n. 24 (9th Cir. 1977)). Although "[d]iscovery should ordinarily be granted where pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary," *Butcher's Union Local No. 498 v. SDC Inv., Inc.*, 788 F.2d 535, 540 (9th Cir. 1986) (citation and internal quotations omitted), "[w]here a plaintiff's claim of personal jurisdiction appears to be both attenuated and based on bare allegations in the face of specific denials made by the defendants, the Court need not permit even limited discovery," *Pebble Beach*, 453 F.3d at 1160 (quoting *Terracom v. Valley Nat'l Bank*, 49 F.3d 555, 562 (9th Cir. 1995)). A court may deny a plaintiff's request for jurisdictional discover when that request is "based on little more than a hunch that it might yield jurisdictionally relevant facts." *Boschetto v. Hansing*, 539 F.3d 1011, 1020 (9th Cir. 2008).

Here, the Court finds limited jurisdictional discovery unwarranted because Samsung has already specifically rebutted Plaintiffs' unsupported jurisdictional allegations and arguments. *See Pebble Beach*, 453 F.3d at 1160. Plaintiffs' request to conduct discovery—without providing any affidavit or evidence substantiating their requests or describing with any precision how such discovery would be helpful to the Court—is unpersuasive. It is a speculative request, akin to hunches that personal jurisdiction might exist, which does not warrant even limited jurisdictional discovery. *See Boschetto*, 539 F.3d at 1020.

### C. Denial of Motion to Transfer

In a fleeting sentence at the end of their Response, Plaintiffs request leave to file a motion to transfer to somewhere Samsung consents to jurisdiction. (Doc. 28 at 12.) Samsung opposes the motion because it is "under no obligation to consent to an alternative forum in the United States; particularly when there is no evidence that any particular state is an appropriate forum where specific personal jurisdiction exists." (Doc. 29 at 11.) Samsung is correct, and Plaintiffs' motion is denied.

## IV. CONCLUSION

Accordingly,

**IT IS ORDERED** granting the Motion to Dismiss against Samsung with prejudice. (Doc. 26.)

**IT IS FURTHER ORDERED** instructing the Clerk to terminate this case and enter judgement in accordance with this order.

Dated this 1st day of February, 2022.

_____
Honorable Susan M. Brnovich
United States District Judge